15314

STATE v. MISHOE *ET AL.*

(17 S. E. (2d), 142)

*Mr. E. S. C. Baker,* of Conway, for appellants,

*Mr. Jeff D. Griffith,* of Saluda, Acting Solicitor, and *Mr. F. A. Thompson,* of Conway, for respondent.

October 27, 1941.

The opinion of the Court was delivered by Mr. Acting Associate Justice L. D. Lide.

The appellants above named, to wit, Mack Mishoe, and two of his sons, Elton Mishoe and Oston Mishoe, were charged with the murder of one Sims Todd on the night of July 16, 1938. All of the alleged actors in the tragedy and many of the witnesses were near neighbors and members of reputable white families living in one of the excellent farming sections of Horry County. The theory of the State, which finds quite definite support in the evidence, was that Elton Mishoe fired the fatal pistol shot which resulted in the death of Sims Todd, who was at the time fleeing from his adversaries; and that the defendants Mack Mishoe and Oston Mishoe (frequently referred to in the record as Austin Mishoe) were present and actively participated; that all of the defendants acted in concert and with preconceived plans. On the other hand, there was testimony by the defendants and in their behalf that Oston Mishoe was attacked by one Clip Todd, a brother of the deceased, and that in response to the cries of his son Oston for help Mack Mishoe appeared on the scene, when he was attacked by Sims Todd who

knocked him down, whereupon Mack Mishoe shot him in self-defense; and that Elton Mishoe was not even present.

The case came on for trial at the September, 1939, term of the Court of General Sessions for Horry County, before Hon. J. Strom Thurmond, presiding Judge, and a jury; and the trial, which lasted more than a week, resulted in a verdict of guilty of murder with recommendation to mercy as to all three defendants. Their motion for a new trial was overruled and the life sentence duly imposed. Thereupon this appeal was taken upon numerous exceptions. These exceptions, however, are reduced to seven points in the argument of counsel for appellants, and each of these points will be discussed by us, but in a somewhat different order.

The errors charged may be briefly stated as being: In refusing a continuance; in refusing a mistrial (and incidental thereto, in the amendment of the Transcript of Record); in respect to a certain portion of the argument of counsel for the State; in ruling on testimony; in the charge to the jury, and in refusing a new trial.

When the case was called for trial the defendants ▮▮ by their counsel moved for a continuance because of the absence of two witnesses who were alleged to be ill; but the presiding Judge refused to continue the case beyond the term or to postpone it to a later date in the term. An affidavit as to the testimony of one of these witnesses was admitted in evidence, and as stated by counsel for the appellants in his argument any question as to this witness is eliminated, but it is earnestly argued that the Court erred in this connection with reference to the witness Mrs. Bell Mishoe, wife of the defendant Mack Mishoe, and mother of the defendants Elton Mishoe and Oston Mishoe, and a very material witness for the defendants.

A physician's certificate as to the illness of Mrs. Bell Mishoe was presented to the Court, but the presiding Judge did not regard the certificate as satisfactory because it did not state whether or not the witness was able to come to Court, but only that her physical condition would be aggra-

vated by her attendance. After some discussion of the matter between the Court and counsel the trial Judge instructed two reputable physicians, one of whom had previously treated Mrs. Mishoe, to examine her and report to the Court as to whether she would be able to attend the trial. They appear to have made a thorough examination of Mrs. Mishoe, and upon their appearance in Court were fully questioned by the presiding Judge and counsel. Their report was to the effect that in their opinion it would not hurt Mrs. Mishoe to come to Court and testify, and further that she was in as good condition and as well able to testify as she would ever be, her condition evidently being, in their judgment, a chronic one. The Judge thereupon ordered the case to trial, and Mrs. Mishoe was brought into Court lying on a cot, and was in attendance throughout the trial, testifying while still on the cot.

It is strongly contended by counsel for appellants that Mrs. Mishoe was in such a weakened condition that she was unable to assist her husband and sons in their defense, and that her testimony was given with much difficulty and was so weak and inaudible that it was impossible for the jury to get the full benefit thereof. However, we have read her extended testimony with due care, and it seems to us to be quite intelligible, and was doubtless very helpful to the defendants. The Court stenographer evidently found no serious difficulty in hearing the witness, and the record shows no complaint by any member of the jury that her testimony was inaudible. And the fact that she was lying on a cot while in attendance upon the trial and when giving her testimony was in our judgment in no wise prejudicial to the defendants but is more likely to have been favorable to them.

We are in full accord with the law as declared by this Court in the case of *State v. Williamson*, 115 S. C., 315, 105 S. E., 697, in which the opinion was delivered by Mr. Justice Watts (who was ever zealous to protect the rights of defendants), to the effect that ordinarily a defendant being tried for a capital felony has the right to have his

wife present at the trial and the wife has the right to be present. But in the case at bar the wife was present and testified in detail in behalf of defendants.

A matter of this kind has been repeatedly held as depending upon the wise discretion of the trial Judge, whose rulings will not be reversed unless the record shows legal abuse of such discretion; and it seems to us that Judge Thurmond properly exercised his discretion under the circumstances in ordering the case to trial.

We think the following quotation from the opinion in the case of *State v. McDonald,* 184 S. C., 290, 192 S. E., 365, 368, is quite applicable to the case at bar: "Applications for continuance are addressed to the sound discretion of the Court, and it is a well-established rule in this commonwealth, and perhaps in all American jurisdictions, that the trial Court's ruling in granting or in refusing a motion for a continuance in a criminal case will not be disturbed in the absence of a clear and conclusive showing of abuse of discretion. *State v. Crosby,* 88 S. C., 98, 70 S. E., 440; *State v. Edwards,* 86 S. C., 215, 68 S. E., 524; *State v. Franklin,* 80 S. C., 332, 60 S. E., 953; *State v. Williams,* 76 S. C., 135, 56 S. E., 783."

But perhaps the point most strenuously urged by ▪ counsel for the appellants, at least upon the oral argument, is that the trial Judge committed prejudicial error in a statement made by him in ruling upon the admissibility of testimony, in that the same was equivalent to a charge on the facts because it indicated that the Judge regarded the testimony of the witness as being true.

The statement complained of was made in response to an objection to the admissibility of certain of the testimony during the examination of Mrs. Bay Todd, wife of the deceased Sims Todd, and we quote the following from the transcript of this part of the record as originally prepared by the Court stenographer, underscoring the particular sentence in question:

"Q. That was Dutch Mishoe? A. Yes, sir.

"Q. Is Dutch Mishoe any defendant in this case? A. No, sir.

"Q. Do you know what relationship he is to the defendant, Mack Mishoe? A. He is his adopted young one, I heard.

"Q. He did what with the shotgun?

"Mr. Ford: Your Honor, we don't think it is proper to go into what somebody else did.

"The Court: I think this is all part of· the *res gestae. She is telling just what happened.* I think it is competent.

Mr. Ford: Will your Honor permit us to give our objection? I want to make a motion to strike out anything as to what somebody else did in connection with this case. As I understand it your Honor overrules it.

"The Court: I overrule it."

It will be observed that at that particular time no objection was made by counsel for the defendants that the statement of the Court was prejudicial, and the direct examination of Mrs. Todd continued at considerable length; but at ·the close of her direct examination counsel for the defendants having procured from the stenographer a transcript of the matter in question moved the Court for a mistrial upon the ground that the statement was prejudicial, and the motion was overruled.

When the matter of settlement of the case for appeal came before Judge Thurmond more than a year after the trial, he corrected the Transcript of Record so that the sentence in question now reads: "She is telling just what she says happened"; and he states in his order settling the case for appeal: "It has been more than a year since the trial of this case and much has occurred since that time that makes it very difficult to remember all the minor details of a trial which lasted as long as this one did. However, after refreshing my memory from the Transcript of Record I am positive that the transcript is incorrect in quoting the Court as follows: 'She is telling just what happened,' but that

what was really said was that, 'She is telling just what she says happened,' or words to that effect."

Counsel for appellants, while deferentially insisting that the Court's memory "should not be substituted for the solemn and written stenographic record in a case," and excepting to the amendment, also argues that even the statement as corrected was prejudicial, but this could scarcely be considered tenable in any view of the matter.

And the law is well and wisely settled that we are bound by the decision of the trial Judge as to the contents of the record. In the case of *Kneece v. Hall,* 138 S. C., 157, 135 S. E., 881, 882, the Court says: "In his order settling the case, the presiding judge says that he did not charge as the stenographer reports that he did charge. *We are bound to accept the statement of the presiding judge."* (Emphasis added.) See, also, *Chesser v. Tyger River Pine Company,* 155 S. C., 356, 152 S. E., 646. In the light of these and other cases the matter requires no further consideration.

However, we deem it proper to say that even if the original stenographic transcript had been correct we are unable to find any error therein. The statement was made by the trial Judge in direct response to an objection to the proposed testimony as to what a person who was not a defendant had done, and what the Court actually ruled was that the proffered testimony was a part of the *res gestae,* that is to say, it related to "what happened." The Court was obviously not passing on the truth of the evidence, and we cannot conceive that the jury could have received such an impression.

While it is quite true that there have been cases in which a statement made by a trial Judge in ruling on the admissibility of testimony might be deemed so clearly an expression of opinion that it would be equivalent to a charge on the facts (as was undoubtedly so in the case of *Lusk v. State Highway Department,* 181 S. C., 101, 186 S. E., 786), it has long been recognized that remarks made by the presiding Judge in the course of the trial need

not be confined in such narrow limits as to prevent him from stating his reasons for his rulings. The correct rule is well expressed in the case of *Black v. Charleston & W. C. Ry. Co.,* 87 S. C., 241, 69 S. E., 230; 31 L. R. A. (N. S.), 1184, quoted with approval in the case of *State v. Robinson,* 91 S. C., 161, 74 S. E., 363, as follows: " 'While the remarks were made in the presence of the jury, they were not made to the jury [or in charging the jury], but to counsel in passing upon his request. This court has recently, in a number of cases, been called upon to consider such remarks made by judges during the progress of trials, and the general rule announced is that such remarks, made in passing upon the admissibility of evidence, or motions for nonsuit or direction of a verdict, do not fall within the inhibition of the Constitution against judges charging juries with respect to matters of fact, and become reversible error, unless they are made in such manner or under such circumstances as to so impress upon the jury the opinion of the judge as to some vital fact in issue that he thereby becomes a participant in the decision of such fact to the prejudice of appellant. *State v. Driggers,* 84 S. C. [526], 530, 66 S. E., 1042 (137 Am. St. Rep., 855; 19 Ann. Cas., 1166) ; *Latimer v. [General] Electric Company,* 81 S. C. [374], 379, 62 S. E., 438, and cases cited.' "

The exceptions relating to the argument of counsel for the State allege in substance that near the closing words of the final argument counsel held up before the jury a bloody undershirt said to have been worn by the deceased at the time of his death and pointed out to them in striking and dramatic manner that there was a pistol ball hole in the back of the shirt and none in the front. A careful review of the Transcript of Record, however, discloses nothing whatever with reference to this alleged argument except that it is referred to in, and made the basis of, one of the grounds of the motion for a new trial. It is indisputable that the rule laid down in the case of *State v. Meehan,* 160 S. C., 111, 158 S. E., 151, to the effect that one

seeking a new trial on such a ground must show that timely objection was interposed, and there must be incorporated in the record the substance at least of the objectionable language, etc., was not complied with in any respect. See, also, *State v. McGill,* 191 S. C., 1, 3 S. E. (2d), 257, and *Cummings v. Tweed,* 195 S. C., 173, 10 S. E. (2d), 322.

But if this be entirely waived we are of opinion that no error was committed. The clothes were introduced in evidence and hence were properly referred to in argument. Moreover, Dr. H. B. Holmes, who made the autopsy and testified for the State, gave it as his opinion (although he could not be perfectly certain) that the entrance of the bullet was in the back and its exit in the front, and stated that the clothes helped him in arriving at his conclusion, because as he said, "the clothing that was next to the wound in the back was pushed in; that that was next to the wound in front wasn't." Manifestly then there was no impropriety in such an argument.

A number of the exceptions charge the trial Judge with error in his rulings on the testimony, and while these exceptions are not specifically treated in appellants' argument, we have reviewed each of them, and our conclusion is that Judge Thurmond's rulings were liberal in favor of the defendants and that his discretion was properly exercised, and hence we find no reversible error in this respect.

There are also numerous exceptions pointing out alleged errors in the charge to the jury, none of which appears to us to be well taken. Indeed, we are of opinion that the charge, especially when read as a whole, is a fair and excellent exposition of the law of the case, every principle favorable to the defendants being therein clearly stated and explained.

The exceptions to the refusal of a new trial cover some of the points already considered, and are not further argued by the appellants.

There are some other exceptions to the order settling the case besides the one above mentioned relating to the correc-

tion of the transcript as to a statement made by the presiding Judge, but manifestly they point out no error in anywise prejudicial to the defendants.

We may say in conclusion that we believe few cases have ever been brought to this Court where it more clearly appeared from the record of what was done at the trial that both the State and the defendants were most efficiently represented by unusually competent and experienced attorneys; and the trial was conducted with manifest fairness and impartiality by the presiding Judge. Counsel for the defendants, including the lamented former solicitor, G. Lloyd Ford, Esq., protected the rights of the defendants at every step of the case with consummate skill. The jury reached the conclusion that the defendants were guilty, but extended mercy as it was their privilege to do, and the evidential basis for their verdict as shown by the record is quite ample, notwithstanding conflicts in the testimony.

We have considered every exception, whether argued by counsel for the appellants or not, and in our opinion they must all be overruled.

The judgment of the Circuit Court is affirmed.

MESSRS. ASSOCIATE JUSTICES BAKER, FISHBURNE and STUKES and MR. ACTING ASSOCIATE JUSTICE A. L. GASTON concur.