**John Paul GURRIERI, Petitioner,**

v.

**J. B. GUNN, Warden of Folsom State Prison, Respondent.**

**No. CV 74-1048-DWW.**

United States District Court,
C. D. California.

Nov. 28, 1975.

John Paul Gurrieri, pro se.

Evelle J. Younger, Atty. Gen., Jack R. Winkler, Chief Asst. Atty. Gen., Crim. Div., S. Clark Moore, Asst. Atty. Gen., James H. Kline, Donald F. Roeschke, Deputy Attys. Gen., Los Angeles, Cal., for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

DAVID W. WILLIAMS, District Judge.

John Gurrieri (Gurrieri) and a co-defendant, John Sarkisian (Sarkisian), were convicted of second degree murder pursuant to § 187 of the California Penal Code. The California Court of Appeals affirmed the conviction of Gurrieri

and denied a rehearing. Subsequently, the Supreme Court of California denied a hearing on the direct appeal. Gurrieri then filed a petition for a writ of habeas corpus in the state courts. After that petition was denied by the state supreme court, Gurrieri petitioned this court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Since this court feels that petitioner's contentions are without merit, the petition is denied.

The murder for which Gurrieri was convicted occurred during a fight between the victim, Dennis Grajeda (Grajeda), and the two defendants. It appears that while inside the Beverly Bowl in Montebello, California, Grajeda repeatedly challenged Gurrieri and Sarkisian to fight. The two defendants eventually accepted the challenge and all three participants, accompanied by friends of each, proceeded to the parking lot outside the bowling alley. On the way, both defendants displayed knives. Although it is not clear from the evidence which defendant actually inflicted the fatal wound, it does appear that Gurrieri had engaged in a wrestling and fist fight with the victim. Neither Gurrieri nor Grajeda was in possession of a lethal weapon during this time, since Gurrieri's knife had been knocked from his hand. Gurrieri called for help and Sarkisian came to his aid by grabbing the victim's head, holding a knife to the victim's throat, and threatening to kill the victim unless the victim's friends dropped their weapons. At that point, Gurrieri added the further warning that Sarkisian intended to carry out the threat. Grajeda's friends then dropped their weapons and both the defendants let go of the victim, stood up, and walked away. The victim immediately thereafter also stood up, took a few steps, and collapsed and died from a stab wound to the heart.

Gurrieri presents three arguments in support of his petiton. First, the evidence was insufficient to sustain a conviction of second degree murder because (a) there is no evidence that he had a knife during the time he was fighting with the victim; (b) there was affirmative evidence that petitioner's knife could not have been the murder weapon; (c) Gurrieri was exculpated by Sarkisian's subsequent admission that he (Sarkisian) murdered Grajeda; and (d) since Sarkisian's admission can be construed as voluntary manslaughter, Gurrieri could be convicted of no greater crime than manslaughter.

Gurrieri's second argument is that he was denied his right to effective counsel at his trial because his trial attorney failed to present to the court Sarkisian's admission that he killed Grajeda. This resulted in the withdrawal of a crucial defense which should have been available to Gurrieri.

The final argument presented by Gurrieri is that the admission into evidence of a jacket owned by him was prejudicial to his defense, and that petitioner has exhausted his state remedies with respect to this issue.

Gurrieri has included several affidavits with his petition. The only relevant affidavit was signed by one Brenda Peek, who stated that she listened to a telephone conversation in which Sarkisian admitted stabbing Grajeda because he thought Grajeda was killing Gurrieri.

In response, Warden Gunn presents three arguments. First, there was evidence that tended to prove that Gurrieri, either alone or by aiding Sarkisian, was guilty of second degree murder. Second, Gurrieri received effective representation at trial because, a) petitioner fails to prove that his trial attorney could have discovered the Sarkisian admission; and b) there was testimony presented that Sarkisian's purpose in joining the fight between Gurrieri and Grajeda was to protect Gurrieri. Third, the court need not reach the merits on the issue of the prejudicial effect of Gurrieri's jacket because, a) Gurrieri intentionally failed to exhaust his state court remedies; and b) Gurrieri has raised only a state evidentiary matter rather than a federal question, and has

already received an adverse ruling by the state court.

The court will dispose of petitioner's contentions in the order in which he has presented them.

▮▮▮ Gurrieri's argument of insufficient evidence is based on four supporting claims. The first three of these are all subject to the same error. All three ignore the possibility that petitioner was found guilty, not because he actually stabbed Grajeda, but because he aided and abetted the commission of the murder. *People v. Terry*, 2 Cal.3d 362, 85 Cal.Rptr. 409, 466 P.2d 961 (1970); *cert. dismissed* 406 U.S. 912, 92 S.Ct. 1619, 32 L.Ed. 112; *People v. Medina*, 41 Cal.App.3d 438, 116 Cal.Rptr. 133 (1974); *People v. Gonzales*, 4 Cal.App. 3d 593, 84 Cal.Rptr. 863 (1970). Nor does it matter that Gurrieri himself may not have taken any action. As the court stated in *People v. Moore*, 120 Cal.App. 2d 303, 306–07, 260 P.2d 1011, 1013 (1953): "Where two or more persons enter upon a common undertaking, whether by prearrangement, or entered into on the spur of the moment, and that undertaking contemplates the commission of a criminal offense, each of the parties to the undertaking is equally guilty of the offense committed whether he did an overt act or not." *See also People v. Lockett*, 25 Cal.App.3d 433, 438, 102 Cal.Rptr. 41, (1972); *People v. Orr*, 43 Cal.App.3d 666, 671, 117 Cal. Rptr. 738, 741 (1974); *People v. Medina, supra*. Finally, the fact that an accused must have instigated, advised, or been present for the purpose of assisting in the commission of the crime in order to be an abettor does not aid Gurrieri since the appropriate test is "whether the accused in any way, directly or indirectly, aided the perpetrator by acts or encouraged him by words or gestures." *People v. Gonzales*, 4 Cal.App.3d 593, 600, 84 Cal.Rptr. 863, 867 (1970); *People v. Vasquez*, 29 Cal.App.3d 81, 87, 105 Cal.Rptr. 181, 184 (1972); *People v. Tambini*, 275 Cal.App.2d 757, 765, 80 Cal.Rptr. 179, 184 (1969); *People v.*

*Villa*, 156 Cal.App.2d 128, 134, 318 P.2d 828 (1957). Gurrieri's warning that Sarkisian did indeed intend to kill Grajeda provided substantial evidence from which the jury might have inferred participation in the murder.

▮▮▮ The fourth supporting argument (that since Gurrieri *could* have been convicted of voluntary manslaughter, he cannot be convicted of second degree murder) is simply incorrect. Since Sarkisian had a knife, the battle was not being fought on equal terms; therefore, reduction of the crime to manslaughter would be incorrect. *Cf. People v. Whitfield*, 259 Cal.App.2d 605, 66 Cal.Rptr. 438 (1968).

▮▮▮ In addition, even if Gurrieri could have been found guilty of a lesser offense does not mean that his conviction on the greater offense is invalid, as long as there is *any* evidence to sustain that conviction. *Phillips v. Pitchess*, 451 F.2d 913 (9th Cir. 1971), *cert. denied* 409 U.S. 854, 93 S.Ct. 187, 34 L. Ed.2d 97; *United States ex rel. Lukas v. Delaware*, 371 F.Supp. 1317 (D.Del. 1974); *Mathis v. Colorado*, 425 F.2d 1165 (10th Cir. 1970). Since the statement and acts of Gurrieri provide such evidence, the conviction of second degree murder cannot be reversed on the ground of insufficient evidence.

Gurrieri's second argument is that he was denied effective representation of counsel, which resulted in the loss of his right to a fair trial. In support of this argument, petitioner states that his trial counsel failed to make a reasonably diligent investigation of the facts, and that had such an investigation been made, counsel would have discovered the affidavit of Brenda Peek. This affidavit, it is contended, would have exculpated Gurrieri, either by proving that he did not stab Grajeda, or by proving that he did not act with malice aforethought.

As was stated earlier, there was evidence from which the jury could have inferred that Gurrieri was guilty of aiding and abetting second degree murder. Consequently, it does not matter that

the Peek affidavit would have proven that Gurrieri did not stab Grajeda.

Gurrieri's argument with respect to a lack of malice aforethought appears to be as follows: the evidence produced at trial revealed "an obviously heated exchange between the victim and petitioner . . ." (Petitioner's brief at P. 14.) From this, petitioner's counsel should have realized that the murder was committed in a heat of passion, and without malice. Counsel should then have diligently sought evidence in support of this theory. Since counsel did not discover the Peek affidavit, he could not have been diligent in his search. Consequently, petitioner was denied his right to effective representation at his trial. Petitioner cites the case of *People v. Slater,* 60 Cal.App.2d 358, 140 P.2d 846 (1943) in support of this contention.

█ There are a number of problems with this argument, each of which is fatal to its success. First, although there was an "obviously heated exchange" between Gurrieri and Grajeda, that exchange involved no lethal weapons. As a result, the use of a lethal weapon by one of the defendants was unreasonable and excessive, and the defense of self-defense is invalid. *See People v. Beyea,* 38 Cal.App.3d 176, 113 Cal.Rptr. 254 (1974); *People v. Cisneros,* 34 Cal.App. 3d 399, 110 Cal.Rptr. 269 (1973); *People v. House,* 12 Cal.App.3d 756, 90 Cal. Rptr. 831 (1970); *People v. Caldaralla,* 163 Cal.App.2d 32, 329 P.2d 137 (1958).

█ Second, even if the initial use of the knife was reasonable, once Sarkisian had his knife at Grajeda's throat, Grajeda was effectively rendered harmless. To inflict *any* injury on the victim at that point was unnecessary and excessive, and therefore unreasonable. *People v. Beyea, supra; People v. Alfreds,* 251 Cal.App.2d 666, 672, 59 Cal.Rptr. 647, 651 (1967); *People v. Collins,* 189 Cal.App.2d 575, 588, 11 Cal.Rptr. 504, 513 (1961).

█ Third, since it was the responsibility of the jury to determine whether there was a reasonable apprehension of bodily injury, the fact that additional evidence could have been presented does not warrant reversal, since even if the evidence had been presented, the court would not be justified in reversing. *Phillips v. Pitchess, supra; Mathis v. Colorado, supra; People v. Alfreds, supra; People v. House, supra; People v. Williams,* 63 Cal.2d 452, 47 Cal.Rptr. 7, 406 P.2d 647 (1965). See also, *Palakiko v. Harper,* 209 F.2d 75 (9th Cir. 1954); *cert. denied* 347 U.S. 956, 74 S.Ct. 683, 98 L.Ed. 1101, *rehearing denied* 347 U.S. 979, 74 S.Ct. 789, 98 L.Ed. 1118. The fact that petitioner has put this in terms of inadequate representation by his counsel is irrelevant.

Fourth, as respondent has noted, Sarkisian testified at the trial that he stabbed at the victim or pulled his knife on the victim in order to protect Gurrieri. As a result, the Peek affidavit would have added nothing to the evidence which was produced, and would not have changed the decision at which the jury arrived. *Phillips v. Pitchess, supra.*

█ Fifth, in order to obtain federal habeas corpus relief on grounds that the petitioner's attorney was incompetent, the petitioner must show that the incompetency caused the trial to be a farce or a mockery of justice. *Musgrove v. Eyman,* 435 F.2d 1235, 1239 (9th Cir. 1971); *Mosley v. Smith,* 404 F.2d 346 (5th Cir. 1968). It has been held that the possibility that more or better evidence could have been produced does not prove that the petitioner was ineffectively represented by his trial counsel. *Palakiko v. Harper, supra.* Consequently, failure to discover the Peek affidavit did not cause the trial to be a mockery of justice.

Finally, the *Slater* case, cited by petitioner, is easily distinguishable. In *Slater,* the petitioner was a 68 year old woman with a heart condition. The victim was a 38 year old man who had repeatedly threatened the petitioner, and had a reputation for violent actions. At

the time of the fatal shooting, petitioner was afraid that the victim was about to break into her apartment and attack her. 60 Cal.App.2d at 360, 140 P.2d at 847–848. Thus, there was much stronger evidence that the petitioner in *Slater* acted reasonably than there is in the instant case.

Gurrieri's third argument is that the admission of his jacket into evidence was prejudicial and unnecessary, since several persons had already identified him as a participant in the fatal fight. The jacket had the word "Warlords" printed on the back, and unspecified profanities on the front. Gurrieri argues that its introduction into evidence was prejudicial because it implied that he was a member of a motorcycle gang.

■ This issue was considered by the California Court of Appeals and rejected. Petitioner did not raise the issue before the Supreme Court of California on direct appeal. Respondent argues that this was an intentional bypass of petitioner's state court remedies. Normally, an evidentiary hearing is required to determine whether such a deliberate bypass did occur. *Fay v. Noia,* 372 U.S. 391, 439, 83 S.Ct. 822, 849, 9 L.Ed.2d 837, 869 (1963). For purposes of this petition, however, this court assumes that the petitioner did not deliberately bypass his state remedies. *See Stallings v. State of South Carolina,* 320 F.Supp. 824, 825 (D.S.Car.1970). Consequently, it is possible to reach the merits of petitioner's third argument.

■ That argument is without merit. The admission of evidence is usually a question of state law. A federal issue is raised only when the error in the admission of evidence impugns fundamental fairness or deprives the defendant of a fair trial. *Thomas v. Craven,* 473 F.2d 1235 (9th Cir. 1973); *Martinez v. Craven,* 429 F.2d 18 (9th Cir. 1970); *Streeter v. Craven,* 418 F.2d 273 (9th Cir. 1969); *Stallings v. South Carolina, supra.*

■ The California appellate court found that admission of the jacket into evidence was not prejudicial. The only issue remaining is whether the trial was fair. This court feels it was, because any prejudicial effect caused by the jacket was offset by testimony that the "Warlords" were a sanctioned, rather than an illegal, motorcycle gang. Thus, any error was harmless. *Cf. Colbroth v. Wainwright,* 466 F.2d 1193 (5th Cir. 1972); *Ellington v. Cox,* 310 F.Supp. 129 (D.Va.1970); *See also Taylor v. Swenson,* 327 F.Supp. 1165 (D.Mo. 1971); *Thacker v. Peyton,* 299 F.Supp. 764 (D.Va.1969).

For the above reasons, the petition for writ of habeas corpus is denied.